Isaiah **MONTANEZ**, Plaintiff-Appellant,

v.

The **CITY OF ORLANDO**, James Parker, K9 Joker, Defendants-Appellees.

No. 15-15211
Non-Argument Calendar

United States Court of Appeals, Eleventh Circuit.

Filed (February 2, 2017)

Bradley Laurent, Carlus Haynes, Haynes & Laurent, Orlando, FL, for Plaintiff-Appellant

Nicholas A. Shannin, Bennett Legal Group, Orlando, FL, Austin Moore, City of Orlando, Orlando, FL, for Defendants-Appellees

Before JORDAN, JULIE CARNES and JILL PRYOR, Circuit Judges.

**PER CURIAM:**

Isaiah Montanez appeals from the district court's grant of summary judgment to City of Orlando police officer James Parker, his K9 partner Joker, and the City of Orlando on Montanez's 42 U.S.C. § 1983 claim alleging violations of the Fourth Amendment arising out of his detention and arrest. Montanez argues that the district court erred in granting summary judgment because Parker lacked sufficient grounds to stop or arrest him and used excessive force to effectuate the arrest. Because we conclude, viewing the evidence in the light most favorable to Montanez, that Parker did not violate Montanez's constitutional rights by detaining and placing him under arrest and did not use excessive force to make the arrest, we affirm the district court's grant of summary judgment based on qualified immunity.

## I. FACTS

After gathering with family to celebrate Easter, Montanez and his cousin, Joshua Mejia, rode their bicycles back home on the Cady Way Trail in Orlando, Florida. Although it was evening and the sun had set, neither bicycle had a light affixed to it, and Montanez's lacked working brakes. Montanez and Mejia were hurrying because the Cady Way Trail is known for robberies and other criminal activity. Parker and another police officer, Michael Turner, were nearby searching for an attempted robbery suspect.

At this point, the parties' narratives begin to diverge partially. Montanez testified by deposition that it was too dark to see that the officers were police and that he did not hear Parker identify himself as a police officer or give an order to stop. Parker suddenly "yoked" Montanez, forcibly knocking him off of his bicycle onto the ground, then Joker began to bite Montanez. In his deposition, Mejia testified that

immediately before the attack Turner had control of Joker. As a result of being knocked from the bicycle and bitten by Joker, Montanez suffered various injuries, including scrapes, scarring, puncture wounds, a gash, and numbness in his arm, as well as anxiety and depression.

Parker offered a different account of the encounter. In his affidavits, he testified that he saw two bicyclists riding toward the officers but could not see them clearly in the darkness. Parker was wearing his Police K-9 uniform, which said "Police K-9" on large patches on his chest and back. He shined a flashlight so that the riders could see that he and Turner were officers, identified themselves as "Police K-9," and ordered the riders to stop. Mejia stopped his bicycle, but Montanez kept riding. To Parker, Montanez appeared to be attempting to flee by maneuvering his bicycle around the two officers. Parker was holding Joker's leash in one hand as Montanez approached; as Montanez rode by, Parker reached out and forcibly pulled him off of the bicycle. To prevent Joker from biting Montanez, Parker grabbed the dog's harness and lifted him off the ground. But Parker fell on top of Montanez, whom Joker then bit, apparently perceiving his handler to be under attack. Parker immediately commanded Joker to release his bite, and the dog complied. Parker arrested Montanez for resisting an officer without violence under Fla. Stat. § 843.02. The State later dropped the charges. Montanez sued Parker, Joker, and the City of Orlando under 42 U.S.C. § 1983, alleging false arrest, unreasonable seizure, and excessive force under the Fourth Amendment, as well as deprivation of liberty without due process under the Fifth Amendment. He also brought various state law tort claims against all three defendants. The district court granted summary judgment to Parker, Joker, and the City of Orlando on Montanez's § 1983 claims and declined to exercise supplemental jurisdiction over his state law claims. Montanez timely appealed.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1268 (11th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). "We review the district court's grant of summary judgment de novo, construing the evidence and all reasonable inferences therefrom in favor of the nonmoving party." *Urquilla–Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

## III. DISCUSSION

Title 42 U.S.C. § 1983 creates a cause of action against "[e]very person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. However, the doctrine of qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

The first stage of qualified immunity analysis requires a government official to demonstrate that he was acting within the scope of his discretionary authority when the allegedly unlawful act occurred. *Id.* "If the defendant was not acting within his discretionary authority, he is ineligible for the benefit of qualified immunity." *Id.* Here, there is no dispute that Parker was engaged in a discretionary function when he stopped and arrested Montanez.

Once "the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* This requires determining both (1) "whether the facts that a plaintiff has ... shown ... make out a violation of a constitutional right" and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

"To determine whether a right was clearly established, we look to binding decisions of the Supreme Court of the United States, this Court, and the highest court of the relevant state (here, Florida)." *Valderrama v. Rousseau*, 780 F.3d 1108, 1112 (11th Cir. 2015). The relevant inquiry is whether, in light of these decisions, "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (internal quotation marks omitted). "While officials must have fair warning that their acts are unconstitutional, there need not be a case 'on all fours,' with materially identical facts, before we will allow suits against them," *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1277 (11th Cir. 2004), for "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

## A. Claims Arising out of the Stop and Arrest

### 1. The Stop

Montanez contends that his Fourth Amendment rights were violated when Parker stopped him. Consistent with the Fourth Amendment, "law enforcement officers may seize a suspect for a brief, investigatory [ ] stop where (1) the officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the stop 'was reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011) (quoting *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). An officer may be entitled to qualified immunity even if there was no actual reasonable suspicion for a stop so long as there was arguable reasonable suspicion. *See Whittier v. Kobayashi*, 581 F.3d 1304, 1308–09 (11th Cir. 2009).

"While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). The Supreme Court has held that "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *Whren v. United States*, 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances. As a general matter, the decision to stop an automobile is reason-

able where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810, 116 S.Ct. 1769. This is true even in the context of a violation of a "civil traffic regulation." *Id.* At the time of the stop, a reasonable officer in Parker's position would have had more than arguable suspicion that Montanez had violated a Florida civil traffic law, which requires that "[e]very bicycle in use between sunset and sunrise shall be equipped with a lamp on the front." Fla. Stat. § 316.2065(7); *id.* § 316.2065(19) (characterizing violations of the statute as noncriminal traffic infractions). The undisputed evidence shows that Montanez's bicycle lacked a light and that Parker encountered Montanez and Mejia after the sun had set, when it was dark out. Although Montanez was riding a bicycle rather than traveling in an automobile, we conclude, consistent with *Whren*, that Parker was authorized to detain him because there was more than arguable suspicion—indeed, probable cause—to believe that Montanez had violated a civil traffic law. For this reason, we affirm the district court's grant of summary judgment to Parker on Montanez's § 1983 claim arising out of the initial stop.

### 2. The Arrest

Montanez argues that even if the stop was lawful, the district court erred in granting summary judgment on his § 1983 claim that Parker violated his constitutional rights by unlawfully arresting him. "[A]n arrest made without probable cause is a violation of an arrestee's clearly established Fourth Amendment rights." *Valderrama*, 780 F.3d at 1113. "[H]owever, a police officer may be entitled to qualified immunity even if there was no actual probable cause for an arrest," so long as "there was arguable probable cause for the arrest." *Id.* Arguable probable cause exists "where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[ ] could have believed that probable cause existed to arrest." *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001) (internal quotation marks omitted). The existence of arguable probable cause is determined using an objective standard. *Lee*, 284 F.3d at 1195.

■ Viewing the evidence in the light most favorable to Montanez, Parker had arguable probable cause to arrest Montanez for resisting an officer without violence. Under Florida law, a person violates the law if he "resist[s] … any officer … in the lawful execution of any legal duty." Fla. Stat. § 843.02. At the time of the incident, Parker was searching for an attempted robbery suspect in a high-crime area. When Parker saw two bicyclists approaching the officers in the dark, he commanded them to stop. Mejia stopped, but Montanez kept moving. Although we must construe the evidence in Montanez's favor and credit his testimony that he did not hear the command to stop, the question here is whether Parker reasonably believed that Montanez heard it. The fact that Mejia complied with Parker's order to stop made it reasonable for Parker to conclude that Montanez had deliberately refused to obey his command. Even drawing the other reasonable inference that Montanez asks us to draw, that his failure to heed Parker's order was innocent and a result of his bicycle lacking brakes, there is no evidence that Parker knew or reasonably could have known about the brakes. Under these circumstances, Parker had arguable probable cause to arrest Montanez for resisting an officer without violence. The district court thus did not err in granting summary judgment to Parker on Montanez's § 1983 claim alleging a Fourth Amendment violation based on the arrest.

## B. Excessive Force Claim

Montanez argues that the district court erred in granting summary judgment on his claim that Parker used excessive force during the arrest. Montanez asserts that Parker used excessive force in two distinct ways: (1) when Parker pulled him off the bicycle and (2) when Joker attacked him. We conclude that Montanez failed to establish the use of excessive force in either respect.

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Lee*, 284 F.3d at 1197 (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Nonetheless, "[t]he Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Id.*

In assessing whether an officer used excessive force, we "must ask whether a reasonable officer would believe that this level of force is necessary in the situation at hand." *Id.* (internal quotation marks omitted). Put another way, "the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force." *Id.* at 1198. To determine whether the use of force was reasonably proportionate, we "must examine (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." *Id.* And to evaluate the need for force, we consider "the severity of the crime, the danger to the officer, and the risk of flight." *Id.*

Determining whether an exercise of force was reasonable cannot be reduced to a mechanical exercise, but "requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. Accordingly, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Saunders v. Duke*, 766 F.3d 1262, 1267 (11th Cir. 2014) (internal quotation marks omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Oliver v. Fiorino*, 586 F.3d 898, 905–06 (11th Cir. 2009) (internal quotation marks omitted).

### 1. Removal From the Bicycle

■ Viewing the evidence in the light most favorable to Montanez, we nonetheless conclude that Parker's use of force to stop Montanez from riding away on his bicycle was reasonable. We begin our analysis with the first *Lee* factor, the need for the application of force. *Lee*, 284 F.3d at 1198. Here, Parker reasonably could have believed that Montanez was resisting, obstructing, or opposing an officer in violation of Fla. Stat. § 843.02. This conduct is akin to resisting arrest, an offense of sufficient severity that *Graham* says it weighs in favor of finding some use of force to be reasonable. *See Graham*, 490 U.S. at 396, 109 S.Ct. 1865. Riding in the dark with no lights, Montanez did not heed Parker's command to stop, and according to Parker's undisputed testimony, appeared to be attempting to maneuver his bicycle away from the officers as if to flee.

A reasonable officer in Parker's position thus also could have believed that there was a risk of flight. *Id.* This risk of flight further supports the need for application of force. *Lee*, 284 F.3d at 1197–98.

Analyzing the second *Lee* factor, we conclude that Parker used no more force than necessary to stop Montanez. *Id.* at 1198. Given the undisputed facts that Montanez failed to stop and instead continued riding his bicycle, Parker had little time to determine what level of force to apply to stop a person on a bicycle who, it appeared, had apparently intentionally disregarded an order to stop and looked to be attempting to flee. Under these circumstances, we cannot say that Parker's decision to forcibly remove Montanez from the bicycle in order to stop him was unreasonable.

The third *Lee* factor, the extent of Montanez's injuries, also supports the conclusion that the amount of force used was not unreasonable. *Lee*, 284 F.3d at 1198. Montanez sustained injuries to the skin on his elbows and knees that led to scarring. Since the incident, he also experienced occasional numbness in his right arm, as well as anxiety and depression. We do not trivialize these injuries; however, they are consistent with forcible removal from a bicycle, and, under the circumstances, do not rise to a level of severity that would suggest that Parker's use of force in stopping Montanez was unreasonable.[1]

In sum, *Graham* and *Lee* require that in determining whether a use of force is reasonable, we look to the particular circumstances of each case. Here, Parker reasonably could have believed that Montanez was resisting, obstructing, or opposing an officer and attempting to flee. He responded by pulling Montanez off of his bicycle, which caused Montanez to suffer relatively minor injuries. Given the need for the use of force, including the severity of resisting an officer and the risk of

flight; the proportionality of the force used to the exigencies of the situation as Parker perceived it to be; and the nature of Montanez's injuries, we hold that under the circumstances of this case, Parker's use of force in removing Montanez from the bicycle was not excessive. The district court properly granted summary judgment to Parker on Montanez's excessive force claim based on removal from the bicycle.

### 2. *Joker's Bite*

■ We conclude that Parker did not use excessive force when Joker bit Montanez. The parties offered conflicting accounts of who had control over Joker right before the dog bit Montanez. Mejia testified in his deposition that Turner had control of Joker at that moment. However, Parker testified in his deposition that he was holding Joker. Montanez's own deposition testimony does not identify who was holding Joker at the time of the attack, and is consistent with either officer having had control. Montanez asserts that the district court erred in not accepting as true Parker's account, which Montanez claims is more favorable to him.

Although Montanez undoubtedly is entitled to have all reasonable inferences from the underlying facts drawn in his favor, it makes no difference here because any way we view the facts, Montanez failed to show that intentional conduct by Parker caused Joker's bite. Montanez cannot prevail under either Mejia's or Parker's account of the facts. Crediting Mejia's testimony that Turner had control of Joker at the crucial moment, there is no basis for holding Par-

---

1. Montanez claims that the district court erroneously applied a "shock the conscience" standard to determine whether the injuries that he sustained were severe enough, as a matter of law, to give rise to liability. But regardless of the test it applied, we agree with the district court's conclusion that Montanez's injuries were insufficient to establish that the use of force was unreasonable under the circumstances.

ker liable.[2] At the same time, crediting Parker's narrative, there is no evidence that Parker commanded or even willfully allowed Joker to bite Montanez. Instead, the undisputed evidence shows that Joker began to bite when Parker fell on top of Montanez after pulling him off the bicycle. Further, no evidence contradicts Parker's testimony that he tried to restrain Joker before he fell. To hold Parker liable, Montanez must identify an intentional action that Parker took or something that he should have done but intentionally did not do to protect Montanez. *See Brower v. Cty. Of Inyo,* 489 U.S. 593, 596–97, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) ("Violation of the Fourth Amendment requires an intentional acquisition of physical control."); *Vaughan v. Cox,* 343 F.3d 1323, 1328 (11th Cir. 2003) (holding that an excessive force claim requires intentional conduct). Montanez has failed to do so under either Mejia's or Parker's versions of the facts.

It is possible, however, to construct a third version of the facts in which Parker had control of Joker at the time of the attack and intentionally released the dog on Montanez. In pertinent part, Montanez described the attack as follows:

> Well, I was riding my bike, and someone just comes out and clotheslines me off my bike. Just like a really hard hit, and I am just riding my bike. You know, minding my—and just, boom, knocks me off my bike, clotheslines me, I hit the ground, and as I am on the ground, the cop's knee is on my back. Like, I figured out it was a cop after, like, I'm attacked because I looked and there's the dog there, and I fall on the floor—I am already on the ground and he has his knee on my back, suppressed, and then the dog comes and starts biting my arm, when I am already on the ground. Like, I had my hands behind my back.

In this account, Parker does not appear to have stumbled, fallen on top of Montanez, and lost control of Joker. Rather, drawing all reasonable inferences in Montanez's favor, including that Parker was handling Joker, a trier of fact could reasonably conclude that Joker bit Montanez only after Parker had intentionally pinned Montanez to the ground.

But this account is inconsistent with the position Montanez took in response to Parker's motion for summary judgment—that Parker was *not* handling Joker at the time of the incident. An appellant cannot change positions on appeal to obtain reversal. *See Access Now, Inc. v. Sw. Airlines Co.,* 385 F.3d 1324, 1331 (11th Cir. 2004) (refusing to consider a theory raised by the plaintiff for the first time on appeal); *see also Felton v. Fayette Sch. Dist.,* 875 F.2d 191, 192 (8th Cir. 1989) (prohibiting appellant from disputing a fact conceded in his statement of facts). Accordingly, we decline to credit this account. We thus affirm the district court's grant of summary judgment to Parker on Montanez's excessive-force dog bite claim.[3]

**2.** Montanez did not name Turner as a defendant. Although he asserts that Parker could be liable for allowing an untrained officer to control Joker, he provides no facts to support this theory of liability, making it entirely conclusory and unable to withstand summary judgment.

**3.** The district court did not err in granting summary judgment to the City of Orlando. To establish the City's liability under 42 U.S.C. § 1983, Montanez had to show that the city's "official policy" caused a constitutional violation. *See Monell v. N.Y. City Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Because we conclude that no violation of Montanez's constitutional rights occurred, we need not consider whether the City had an official policy.

The district court also granted summary judgment to Joker. On appeal, Montanez has abandoned any argument that Joker was not entitled to summary judgment. *See Stansell v.*

## IV. CONCLUSION

For all of the foregoing reasons, the district court's grant of summary judgment is affirmed.

**AFFIRMED.**

*Revolutionary Armed Forces of Colom.*, 771 F.3d 713, 744 (11th Cir. 2014) (holding that a party waives an argument by failing to raise it on appeal). In any event, Joker cannot be liable, both because no constitutional violation occurred and because a dog is not a "person" within the meaning of § 1983. *See* 42 U.S.C. § 1983.