[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 13-14413

————————————————

D.C. Docket No. 1:11-cv-00236-AT

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,

Plaintiff - Appellant,

versus

JUSTIN MAURICE MOORE,
WILLIE THACKSTON,
THE ESTATE OF BRANDON THOMAS,
BRANDY THOMAS,
surviving spouse of Brandon Thomas, deceased,

Defendants - Appellees.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia
————————————————
(August 14, 2014)

Before JORDAN, Circuit Judge, and BARTLE,[*] and BERMAN,[**] District Judges.

_____

[*]  The Honorable Harvey Bartle III, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.
[**]  The Honorable Richard M. Berman, United States District Judge for the Southern District of New York, sitting by designation.

BARTLE, District Judge:

Plaintiff Travelers Property Casualty Company of America ("Travelers") seeks a declaratory judgment that there is no coverage for and thus no duty to indemnify defendant Justin Maurice Moore ("Moore") under his employer's commercial automobile insurance policy (Travelers Policy No. TC2JCAP-101D6235) for an incident which is the subject of underlying tort actions pending in the Georgia state court. *See* 28 U.S.C. §§ 1332(a) and 2201. In those actions, Moore is being sued for killing Brandon Thomas ("Thomas") and wounding Willie Thackston ("Thackston") with a shotgun while Moore was chasing them in his employer's van as they were in the process of repossessing Moore's car. Moore, Thackston, the Estate of Brandon Thomas, and Thomas's surviving spouse, Brandy Thomas, all parties in the state court actions, are the defendants here.[1]

The District Court first granted partial summary judgment in favor of the defendants and against Travelers. It determined as a matter of law that Moore had permission to use the van at the time of the incident and thus was an insured under the policy. It then found, after a non-jury trial, that the death of Thomas and shooting of Thackston was an "accident" as that term is used in the Travelers policy and that Moore neither "expected" nor "intended" Thomas's death or Thackston's injuries. As a result of

---

[1] Moore has not answered or otherwise made an appearance in the instant lawsuit. Allison Thackston is also a plaintiff in the underlying lawsuit in which Willie Thackston is a plaintiff, but she has not been named as a defendant in this action.

2

these decisions, the District Court declared that coverage existed.  Judgment was entered accordingly in favor of the defendants and against Travelers, and Travelers has now appealed.

## I

The decision of a district court on summary judgment is reviewed *de novo*. *Layton v. DHL Express (USA), Inc.*, 686 F.3d 1172, 1175 (11th Cir. 2012).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When ruling on a motion for summary judgment, "we resolve all ambiguities and draw reasonable factual inferences from the evidence in the non-movant's favor."  *Layton*, 686 F.3d at 1175 (citing *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 840 (11th Cir. 2000)).

With regard to the bench trial, we review the District Court's findings of fact on a clear error standard and its conclusions of law *de novo*.  *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1319 (11th Cir. 2011).  "Under the clear error standard, we may reverse the district court's findings of fact if, after viewing all the evidence, we are left with the definite and firm conviction that a mistake has been committed." *Id.* at 1319–20 (internal quotation marks omitted).

## II

The facts relevant to this appeal are largely undisputed.[2]  On November 12, 2009, Thackston and Thomas arrived at Moore's home in Atlanta in a tow truck seeking to repossess Moore's personal vehicle, a Ford Mustang.  The Mustang was parked in the driveway along with a van provided to Moore by his employer, GTECH Corporation ("GTECH").

Upon arrival at Moore's residence, Thomas knocked on the door and had a conversation with the person who answered, after which Thomas and Thackston proceeded to attach the Mustang to the tow-boom of their truck.  As they were doing so, Moore appeared outside with a loaded sawed-off shotgun and fired a shot into the air. The weapon was a pump-action model, which requires the shooter manually to cycle the action between each firing to eject the spent shell casing and chamber a new cartridge. Moore fired three more rounds, two of which hit the boom of the tow truck.  The last shot blew out the truck's front, passenger-side tire.  Beating a hasty retreat, Thackston drove away on the flat tire with Thomas in the passenger's seat and the Mustang in tow.  Moore retrieved the keys to the GTECH van and gave chase, during which he pointed the shotgun out of the driver-side window.

When Thackston realized that Moore was in pursuit, he began swerving the truck back and forth across the road, hoping to prevent the van from coming alongside for

---

[2]  By stipulation of the parties, the facts are derived mainly from the record in the criminal case in which Moore was prosecuted for the same conduct described here.

4

another shotgun blast. Despite these maneuvers, the GTECH van drew up to the truck's passenger side as the vehicles entered a cul-de-sac. The truck contacted the van at between twenty-five and thirty-five miles per hour, and the shotgun went off a fifth and final time.

While the District Court found that Moore shot his victims unintentionally, it is undisputed that the weapon fired because Moore had his finger on the trigger. The blast killed Thomas, and Thackston sustained non-fatal wounds. Moore fled the scene in the van and returned shortly thereafter. Brandishing his shotgun, he compelled Thackston to lower the Mustang off of the tow-boom. Moore fled in the car, and Thackston hid in the woods nearby. Moore was apprehended in the following days.

On December 6, 2010, a jury found Moore guilty of felony murder, aggravated assault with a deadly weapon, and other associated offenses.[3] He was sentenced to life imprisonment, and the Supreme Court of Georgia affirmed. *See Moore v. State*, 754 S.E.2d 333, 335 (Ga. 2014).[4]

On June 10, 2008 before taking possession of the van, Moore signed a GTECH Fleet Policy Acknowledgment Form. He acknowledged reading the GTECH

---

[3] Moore was also convicted of fleeing and attempting to elude police and possession of a firearm during the commission of a felony. The jury acquitted on charges of murder (causing the death of another with malice aforethought), voluntary manslaughter (causing the death of another in a sudden passion in response to serious provocation), and involuntary manslaughter (causing the death of another unintentionally either by reckless conduct or by pointing a firearm at the victim) as those charges were defined in the instructions to the jury.

[4] The affirmance by the Georgia Supreme Court was called to this Court's attention during the oral argument on this appeal.

Corporation Fleet Policy especially as it pertained to "complying with restrictions on personal use of the company vehicle." The Acknowledgment Form also contained, above his signature, a check mark beside the words "Personal Use Not Authorized." The Corporate Fleet Policy, which Moore confirmed he had read, stated, "Non-exempt employees are provided a vehicle as a tool to do the job, and are *not* permitted to use the vehicle for personal use." According to the testimony of James Benton, Moore's immediate supervisor who had witnessed Moore's signature, GTECH's policy against personal use was so strict that employees were not even permitted to fuel a company vehicle outside of business hours. Benton also stated that Moore did not have permission to chase down Thomas and Thackston in GTECH's van as they were repossessing his Mustang.

GTECH is headquartered in Rhode Island and installs and services lottery machines in Georgia. Moore was employed by GTECH as a service technician and was supplied with the van for his commute to a central company location and for travel to and from installation sites.

There are a number of extant records related to Moore's use of the company van. Moore maintained a service log, which contains a list of the addresses where he was engaged in the installation of lottery machines on specific dates. A series of regular gasoline records also exists showing odometer readings and the amounts of fuel purchased on a given date. Based on this documentation, the defendants calculate that

6

over half of the mileage accrued during the time Moore operated the van could not be associated with any work assignment on the service log. There is some question, however, as to the completeness of these records given that all work assignments were not required to be noted in the log.

The Travelers insurance policy that covered the use of the van was delivered to GTECH at its office in Rhode Island and went into effect on October 1, 2009. It provides in relevant part:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

The following are "insureds":

> [a]nyone … while using with your permission a covered "auto" you own, hire, or borrow …

The policy carves out an exclusion:

> This insurance does not apply to "bodily injury" or "property damage" expected or intended from the standpoint of the "insured."[5]

### III

On cross-motions for summary judgment the District Court ruled in favor of the defendants that Moore was an insured under the Travelers policy. The court reached this

---

[5] This exclusion would not totally absolve Travelers of liability but rather limits the defendants' recovery to Georgia's statutory minimum coverage of $25,000 per claim.

result because in its view Moore had the "permission" of GTECH to use the company van during the November 12, 2009 pursuit of Thomas and Thackston. Following a bench trial, the court found that the death of Thomas and the injuries to Thackston were the result of an "accident" and that the injuries were not "expected or intended" by Moore. Based on its summary judgment ruling and its findings of fact and conclusions of law, the District Court held that Travelers would be obligated to indemnify Moore under the insurance policy for any liability arising out of the encounter in issue.

Travelers argues that the District Court erred in concluding that: (1) Moore was an insured under the policy; (2) the death of Thomas and the shooting of Thackston were accidents; and (3) the harm these men suffered was not expected or intended by Moore. We turn first to the question whether Moore was an insured under the policy. For him to be an insured, the events in question must have occurred while he was using the van with GTECH's permission. If he was not an insured, there is no coverage and the remaining issues raised by Travelers are moot.

A federal court sitting in a diversity action applies state law using the choice of law rules of the forum state, in this case Georgia. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998). Georgia follows the *lex loci contractus* rule, under which contracts "are to be governed as to their nature, validity and interpretation by the law of the place where they are made." *Gen. Tel. Co. of the Southeast v. Trimm*, 311 S.E.2d

8

460, 461 (Ga. 1984) (quoting *Tillman v. Gibson*, 161 S.E. 630, 632 (Ga. Ct. App. 1931));

*see Convergys Corp. v. Keener*, 582 S.E.2d 84, 87 (Ga. 2003).  "Under Georgia law, an

insurance contract is 'made' where it is delivered."  *Boardman*, 135 F.3d at 752.  It is

undisputed that the Travelers policy was delivered to GTECH at its headquarters in the

state of Rhode Island.  All parties agree that Rhode Island's law of contract interpretation

applies unless "the applicability of the law of the chosen state would be contrary to

Georgia's public policy."  *Johnson v. Occidental Fire & Cas. Co. of N.C.*, 954 F.2d 1581,

1584 (11th Cir. 1992) (quoting *Ryder Truck Lines, Inc. v. Goren Equip. Co.*, 576 F. Supp.

1348, 1354 (N.D. Ga. 1983)).

The District Court referenced several statutory provisions of Rhode Island law in

finding that Moore had permission to use his employer's van during his pursuit of

Thomas and Thackston and thus was an insured.  Section 31-33-6 of the Rhode Island

General Laws provides:

> Whenever any motor vehicle shall be used, operated, or caused to be operated upon any public highway of this state with the consent of the owner, lessee, or bailee, expressed or implied, the driver of it, if other than the owner, lessee, or bailee, shall in the case of an accident be deemed to be the agent of the owner, lessee, or bailee, of the motor vehicle unless the driver shall have furnished proof of financial responsibility in the amount set forth in chapter 32 of this title, prior to the accident ….

9

R.I. GEN. LAWS § 31-33-6. The parties now agree that this section is not applicable since the motor vehicle driven by Moore, the GTECH van, was not being "used, operated, or caused to be operated upon any public highway" of Rhode Island.

Section 31-33-7, on which the District Court primarily relied, does not contain the specific geographic limitation that is included in § 31-33-6. It creates a presumption of consent in cases in which the registered owner of a vehicle is not the driver:

> In all civil proceedings, evidence that at the time of the accident or collision the motor vehicle was registered in the name of the defendant, shall be prima facie evidence that it was being operated with the consent of the defendant, and the absence of consent shall be an affirmative defense to be set up in the answer and proved by the defendant.

R.I. GEN. LAWS § 31-33-7. This statutory language has been construed to mean that granting even limited consent to use a vehicle constitutes consent to use it for all purposes. A valid defense to the presumption arises only when no permission at all was given. *See Black v. Viaciulis,* 934 A.2d 216, 220 (R.I. 2007). The parties disagree sharply over whether the presumption set forth in § 31-33-7 applies in this case. For two reasons, we conclude that it does not.

First, the plain language of the statute does not fit the circumstances presented here. Section 31-33-7 provides that a vehicle's registration "in the name of the *defendant*" at the time of an accident "shall be prima facie evidence that it was being operated with the consent of the *defendant*." R.I. GEN. LAWS § 31-33-7 (emphasis added). The *defendant* is allowed to plead and prove lack of any consent as an

10

affirmative defense. *Id.* GTECH, the registered owner, is not a party, much less a defendant in this action or in the underlying state court proceedings. By its terms, the presumption of consent in § 31-33-7 is simply unavailing when the registered owner of the vehicle in question is not named as a defendant.

Second, we have found no court decision other than that of the District Court which has relied on § 31-33-7 in interpreting the terms of an insurance contract, and we believe that the Supreme Court of Rhode Island would not sanction such reliance. *See CSX Transp., Inc. v. Trism Specialized Carriers, Inc.*, 182 F.3d 788, 790 (11th Cir. 1999). In *Dias v. Cinquegrana*, 727 A.2d 198 (R.I. 1999), the owner of a vehicle appealed a money judgment against her under § 31-33-6 where the driver, who was her son and had her consent to use her car, had committed an intentional tort. She argued she could not be liable because the injuries he caused were not the result of an accident. The Rhode Island Supreme Court affirmed the judgment on the ground that intentional torts are encompassed within the meaning of the word "accident" in § 31-33-6. It explained, however, that its "decision affects the liability of a vehicle owner for the acts of the driver under § 31-33-6; *it does not delineate what is or is not covered under any particular insurance policy.*" *Id.* at 200 (emphasis added). We see no reason why the Rhode Island Supreme Court would treat § 31-33-7 differently from § 31-33-6 in this regard. Section 31-33-7, like § 31-33-6, deals with the liability of a motor vehicle owner to an injured

11

victim when the owner's vehicle is being driven by a third party.  It does not concern the interpretation of the owner's insurance policy. [6]

Since Rhode Island's statutory presumption of consent under § 31-33-7 does not apply, we turn to the well-established principle of Rhode Island law that an insurance policy must be interpreted, like other contracts, by giving the words in the policy "their plain, ordinary, and usual meaning."  *Cheaters, Inc. v. United Nat'l Ins. Co.*, 41 A.3d 637, 643 (R.I. 2013) (quoting *Aetna Cas. & Sur. Co. v. Sullivan*, 633 A.2d 684, 686 (R.I. 1993)).  The insurance contract in this case, as noted above, defines an "insured" as "[a]nyone . . . while using with your permission a covered 'auto' you own, hire or borrow."  Thus, for Moore to be an insured, he had to have had permission, as ordinarily understood, to use GTECH's van for the events for which coverage is sought.  No statutory presumptions, enacted for public policy reasons, pertain in this analysis.

The defendants maintain that despite GTECH's no personal use policy for its vehicles it acquiesced in and thus gave permission for Moore's personal use of the van.  Defendants point to evidence that he purchased considerably more fuel—often after business hours—than was necessary to perform the jobs he recorded in his service log.  Travelers contests the significance of this evidence based on the fact that special work

---

[6] We need not decide whether § 31-33-7 is inapplicable for another reason, that is, that it does not apply to events that occurred outside of Rhode Island.  As stated above, this provision does not include the same explicit geographic limitation language as does § 31-33-6.  We note, however, that the Rhode Island Superior Court has previously explained that neither § 31-33-6 nor § 31-33-7 has any application to loss events in other states.  *See McCarthy v. Ryder Rental, Inc.*, No. C.A. 75-4031, 1976 WL 181973, at *1 (R.I. Super. Ct., Mar. 15, 1976).

assignments with which Moore was likely tasked were not recorded on the service log. The facts in the record are not clear on how Moore employed the van if at all during his off hours.[7]

Nonetheless, even if GTECH's records established that Moore was regularly using its van for general personal use and that GTECH is deemed to have consented to such use by failing to stop the violation of its no personal use policy, it does not follow that GTECH had granted him permission to use the van as a pursuit vehicle in furtherance of a deadly criminal rampage. There is, of course, no evidence in the record that GTECH had granted such permission or that GTECH had any advance knowledge of what was to occur. To the contrary, there is the undisputed testimony of Moore's supervisor, James Benton, who stated that Moore did not have GTECH's permission to utilize its van to pursue Thomas and Thackston to recover his Mustang.[8]

Even without Benton's testimony, it is not reasonable to infer, on the present record, that any grant of permission to use a vehicle for personal purposes encompasses its use to aid in the commission of serious felonies, especially where a homicide results for which the driver of the vehicle is sentenced to life imprisonment. From GTECH's standpoint, such utilization could not have been reasonably anticipated or foreseen. *See generally* RESTATEMENT (SECOND) OF AGENCY §§ 231, 238. We must give the word

---

[7] Of the 274 fuel transactions shown, roughly a quarter of them were for a type of fuel other than what was used in the GTECH van.

[8] Moore never provided testimony on the subject of personal use of GTECH's van. An attempt was made to depose him in prison, but he refused to testify.

"permission" its "plain, ordinary and usual meaning" as required under Rhode Island law. In doing so, GTECH cannot be said to have given Moore permission to use its van to pursue Thomas and Thackston to prevent the repossession of his Mustang and in the process to use the van to fire a sawed-off shotgun, which killed Thomas and wounded Thackston.

In sum, there is no evidence from which a reasonable jury could find that Moore had GTECH's permission to use its van as he did on that fateful November 12, 2009. Consequently, he was not an insured under the Travelers insurance policy in issue, and there can be no indemnity for him under the policy for the claims presented in the underlying state court actions. The remaining questions raised by Travelers and reached by the District Court are now moot.

**IV**

For the reasons stated above, the order of the District Court granting summary judgment in favor of defendants Justin Maurice Moore, Willie Thackston, the Estate of Brandon Thomas, and Brandy Thomas and against plaintiff Travelers Property Casualty Company of America declaring Moore to be an insured under Travelers Policy No. TC2JCAP-101D6235 is reversed. The action is remanded to the District Court to enter summary judgment in favor of Travelers and against the defendants. Such judgment shall declare that Travelers has no duty to indemnify Justin Maurice Moore under Travelers Policy No. TC2JCAP-101D6235 in connection with claims involving the death

14

of Brandon Thomas and the shooting of Willie Thackston on November 12, 2009.  The District Court is further directed to vacate as moot its order finding and concluding that the November 12, 2009 incident was an "accident" within the meaning of the subject policy and that the "expected or intended from the standpoint of the insured" exclusion in the policy does not apply.

     **REVERSED AND REMANDED.**