[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15751
Non-Argument Calendar
_____

D.C. Docket No. 3:15-cv-00083-CDL


GUARANTEE COMPANY OF NORTH AMERICA,

Plaintiff - Appellee,

versus

GARY'S GRADING & PIPELINE CO., INC., et al.,

Defendants -
Cross Defendants,

PINE PLANTATION LLC,

Defendant -
Cross Claimant -
Appellant,

CGP EQUIPMENT COMPANY, INC., et al.,

Defendants,

GARY G. OPOLKA,

Defendant -

Cross Defendant -
Cross Claimant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(August 16, 2018)

Before JORDAN, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Plaintiff Guarantee Company of North America ("GCNA") brought this action to collect payments GCNA made to third parties pursuant to a bond indemnification agreement.  Defendant Pine Plantation LLC (Pine Plantation) is one of several indemnitors named in the agreement.  The district court entered summary judgment in favor of GCNA as to Pine Plantation's liability under the agreement, and a jury determined that GCNA is entitled to $2,546,354.69 in damages.  Pine Plantation appeals the district court's summary judgment order, as well as its entry of judgment on the jury's verdict as to damages.  After careful review, we affirm.

## BACKGROUND

GCNA is a surety company that issues payment and performance bonds to assist in financing construction projects.  Pine Plantation is a Georgia LLC that is

2

owned in equal shares and co-managed by brothers Christopher, Gary, and Peter Opolka. At all times relevant to this action, Gary's Grading was a Georgia construction company primarily operated by Christopher Opolka.

In October 2012, Christopher Opolka, as a manager and on behalf of Gary's Grading and Pine Plantation, entered into a bond indemnification agreement with GCNA. Pursuant to the agreement, GCNA agreed to issue payment and performance bonds to suppliers and subcontractors of Gary's Grading on various construction projects. In exchange, Gary's Grading, Pine Plantation, and other related entities—including Christopher Opolka individually—agreed to post collateral at GCNA's request and to indemnify GCNA for any losses incurred in connection with the bonds.

While negotiating the bond agreement, GCNA employees met only with Christopher Opolka. The agreement contains both Christopher and Gary's notarized signatures, but Pine Plantation argues that Christopher forged Gary's signature and that Gary had no knowledge of the agreement until 2015, nearly three years after it was executed. A jury agreed with Pine Plantation on that point, finding that Gary did not sign the agreement. Thus, we must assume that Christopher Opolka was the only Pine Plantation manager who authorized Pine Plantation to enter into the agreement.

As required by the agreement, GCNA issued multiple bonds to suppliers and subcontractors of Gary's Grading. Those suppliers and subcontractors sought payment from GCNA when Gary's Grading failed to pay them for services and materials provided in relation to the bonded construction projects. GCNA paid the suppliers and subconctractors, and then demanded that the indemnitors named in the bond agreement—including Christopher Opolka, Gary Opolka, Pine Plantation, and Gary's Grading—post collateral and reimburse GCNA for the payments it made. After none of the indemnitors complied with its request, GCNA filed this action.

GCNA's claims against Christopher Opolka were stayed when he initiated bankruptcy proceedings. All of the other indemnitors except Gary Opolka and Pine Plantation failed to answer GCNA's complaint and thus defaulted on the claims asserted therein. GCNA's claims against Pine Plantation and Gary Opolka proceeded to discovery.

At the close of discovery, GCNA moved for summary judgment on its claims against Pine Plantation. In opposition to the motion, Pine Plantation argued that Christopher Opolka did not have the authority to bind Pine Plantation to the bond agreement. The district court granted summary judgment to GCNA on the issue of Pine Plantation's liability, holding that the bond agreement was binding on Pine Plantation and that Pine Plantation had breached the agreement by not posting

4

collateral or reimbursing GCNA for the payments it had made to bond claimants. But the court found insufficient evidence to calculate GCNA's damages as a matter of law, and ultimately held a jury trial as to GCNA's damages, as well as the issue of Gary Opolka's liability.

The jury concluded that Gary Opolka did not sign the bond agreement and was therefore not liable under it. As to GCNA's damages, the jury found Pine Plantation liable to GCNA in the amount of $2,546,354.69. This finding was based on the testimony of Christina Zabek, the GCNA employee who handled the Gary's Grading bond claims, and on documentary evidence, specifically, the checks written by GCNA to bond claimants. Pine Plantation objected to Zabek's testimony on hearsay and other grounds. In addition, Pine Plantation filed a motion for judgment as a matter of law, claiming that GCNA did not adequately prove its damages. The district court overruled the objection to Zabek's testimony and denied Pine Plantation's motion for judgment as a matter of law.

Pine Plantation now appeals three issues: (1) whether Christopher Opolka had the authority to bind Pine Plantation to the bond agreement, as the district court held in its summary judgment order, (2) whether the district court abused its discretion by relying on inadmissible hearsay in its summary judgment ruling, and (3) whether the district court erred when it denied Pine Plantation's motion for judgment as a matter of law.

## STANDARDS OF REVIEW

We review the district court's summary judgment ruling *de novo*, using the same legal standard as the district court. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013). Pursuant to that standard, summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In conducting our review, we view all facts and resolve all doubts in favor of the nonmoving party. *Feliciano*, 707 F.3d at 1247. Similarly, we review the district court's denial of Pine Plantation's motion for judgment as a matter of law *de novo*, drawing all reasonable inferences in favor of the nonmoving party. *Home Design Servs., Inc. v. Turner Heritage Homes Inc.*, 825 F.3d 1314, 1320 (11th Cir. 2016). We review the district court's evidentiary rulings for an abuse of discretion. *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007). Applying that standard, we will only reverse if the district court "made a clear error of judgment" or "applied the wrong legal standard." *Id.*

## DISCUSSION

I. **The district court correctly held, on summary judgment, that Pine Plantation is liable to GCNA under the bond agreement.**

Pine Plantation argues that it is not bound by the bond agreement because Christopher Opolka did not have the authority to execute the agreement on Pine

6

Plantation's behalf.  For the reasons set out below, we agree with the district court that Christopher Opolka acted within the scope of his authority as a manager of Pine Plantation when he signed the agreement, and that Pine Plantation is thus liable to GCNA under the agreement.

A.    Pine Plantation's operating agreement determines the scope of Christopher Opolka's agency authority.

The parties agree that Georgia law applies to this action, which is on appeal from a Middle District of Georgia court sitting in diversity jurisdiction and which involves a bond agreement that was executed and delivered in Georgia.  *See Rosa and Raymond Parks Inst. for Self Dev. v. Target Corp.*, 812 F.3d 824, 829 (11th Cir. 2016) (explaining that "a federal court sitting in diversity applies the substantive law of the state in which it sits"); *Travelers Property Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1270–71 (11th Cir. 2014) (noting that Georgia applies the *lex loci contractus* rule, and that in Georgia a contract is "made" where it is delivered).  Under Georgia law, an agent acting within the scope of his agency authority can bind his principal to a contract with a third party.  *See Harvey v. Bank One*, *N.A.*, 290 Ga. App. 55, 57 (Ga. Ct. App. 2008).  To determine whether Christopher Opolka had the agency authority to bind Pine Plantation to the bond agreement at issue in this case, we look to Pine Plantation's operating agreement, which expressly addresses his authority as an agent of the LLC.  *See BBL-McCarthy, LLC v. Baldwin Paving Co.*, 285 Ga. App. 494, 497 (Ga. Ct. App.

7

2007) (explaining that the clear and unambiguous terms of a written contract govern its construction); *Findlay Brick Co. v. Am. Sewer Pipe Co.*, 18 Ga. App. 446 (Ga. Ct. App. 1916) ("Where an agent's authority is conferred and defined in writing, the scope or extent of such authority must be determined from the terms of the writing, and is to be determined and construed by the court.").

It is undisputed that the operating agreement made Christopher Opolka an agent of Pine Plantation. The determinative issue is whether Christopher Opolka exceeded the scope of his agency authority by executing the bond agreement without the knowledge or consent of Pine Plantation's co-managers Gary and Peter Opolka. Pine Plantation argues that under its operating agreement, a single manager cannot bind the corporation. In support of its argument, Pine Plantation cites a provision in its operating agreement that states:

> At any time when there is more than one Manager, no one Manager may take any action permitted to be taken by the Managers without agreement of the other Manager or Managers, or unless other approval requirements of the Managers are expressly set forth elsewhere in this Operating Agreement or the Georgia Act.

According to Pine Plantation, this language requires all managers to authorize a contract in order for Pine Plantation to be bound under it.

We are unpersuaded by this argument. As quoted above, the operating agreement states that "no one Manager may take any action permitted to be taken by the Managers without agreement of the other Manager or Managers, **or unless**

8

other approval requirements of the Managers are expressly set forth elsewhere in this Operating Agreement or the Georgia Act." As used in this provision, the "Georgia Act" refers to the Georgia Limited Liability Company Act (the LLC Act), O.C.G.A. § 14-11-100, *et seq*. The plain language of the agreement thus lays out three ways in which a manager can bind Pine Plantation: (1) by getting the approval of the other managers, (2) by complying with "other approval" requirements set out elsewhere in the operating agreement, or (3) by complying with "other approval" requirements set out in the LLC Act. *See Albritton v. Kopp*, 300 Ga. 529, 531 (Ga. 2017) (emphasizing that the plain language of a contract governs its interpretation).

We assume based on the jury's finding that Christopher did not get Gary or Peter Opolka's approval to enter into the bond agreement. And the parties agree that there are no relevant "other approval" provisions set out elsewhere in the operating agreement. Nevertheless, we agree with the district court that Christopher Opolka complied with "other approval" requirements set forth in § 14-11-301(b)(2) of the LLC Act in executing the bond agreement, thus binding Pine Plantation to the agreement.

      B.     <u>Christopher Opolka satisfied the requirements of § 14-11-301(b)(2) of the LLC Act, thereby binding Pine Plantation to the bond agreement.</u>

Section 14-11-301(b)(2) of the LLC Act states that:

> Every manager is an agent of the limited liability company . . . for apparently carrying on in the usual way the business and affairs of the limited liability company . . . unless the manager so acting has, in fact, no authority to act for the limited liability company in the particular matter, and the person with whom he or she is dealing has knowledge of the fact that the manager has no such authority.

O.C.G.A. § 14-11-301(b)(2). Pursuant to this provision, a manager acts as an agent for an LLC to the extent that he is (1) "apparently carrying on in the usual way the business" of the LLC and (2) unless he has no authority to take the particular action at issue "**and** the person with whom he . . . is dealing has knowledge of the fact that the manager has no such authority." *Id.* Christopher Opolka satisfied both of these requirements when he executed the bond agreement with GCNA.

As to the first requirement, Pine Plantation's argument focuses on whether Christopher Opolka actually had the authority to sign the bond agreement without the approval of his co-managers. But § 14-11-301(b)(2) asks whether a manager acted with apparent, rather than actual, agency authority. There is no question that Christopher Opolka acted with apparent agency authority when he executed the bond agreement with GCNA. He approached GCNA about the bond agreement in an effort to obtain financing that was necessary to the business of Pine Plantation's sister corporation, Gary's Grading. During the negotiations concerning the agreement, Christopher provided GCNA with consolidated financial statements of Gary's Grading and Pine Plantation, and he represented (1) that the corporations

10

functioned as a conglomerate, (2) that he was authorized as a manager to enter into an agreement that would be binding on both corporations, and (3) that Gary Opolka also had authorized the agreement.  Further, it is undisputed that GCNA believed Christopher had on a prior occasion executed a bond agreement on behalf of Pine Plantation and Gary's Grading in the exact same manner as he did here, and without signatures from Gary or Peter Opolka.  *See Fielbon Dev. Co., LLC v. Colony Bank of Houston Cty.*, 290 Ga. App. 847, 851 (Ga. Ct. App. 2008) (interpreting an identical "carrying on the usual way" phrase in O.C.G.A. § 14-11-301(c) to encompass an act the manager had done in the past).

Pine Plantation is therefore bound to the bond agreement unless Christopher Opolka did not have the authority to act **and** GCNA had knowledge of that fact. *See* § 14-11-301(b)(2).  There is no evidence that GCNA knew Christopher Opolka lacked authority to execute the bond agreement without the signatures of Gary and Peter Opolka.  In support of its argument to the contrary, Pine Plantation points to the fact that GCNA might have possessed a copy of Pine Plantation's operating agreement.  Even if GCNA saw Pine Plantation's operating agreement, that would not inform the company that Christopher Opolka lacked authority to execute the bond agreement.  In fact, it affirms the opposite.  The operating agreement explicitly states that:

> Any person dealing with the company, other than a Member, **may rely on the authority of any manager or officer in taking any**

11

**action in the Company's name.**  They will not need to inquire into the provision of this Operating Agreement or with compliance, regardless of whether the action actually is taken in accordance with this Operating Agreement.

Contrary to the plain language of O.C.G.A. § 14-11-301(b)(2), Pine Plantation argues that it should not be held liable under the bond agreement because GCNA failed to adequately investigate whether Christopher Opolka had the authority to execute the agreement on behalf of Pine Plantation.  But Pine Plantation's reliance on *Ly v. Jimmy Carter Commons*, *LLC*, 286 Ga. 831 (Ga. 2010) in support of this argument is misguided.  In *Ly*, the Georgia Supreme Court denied summary judgment because there was substantial evidence that the contracting third party knew the agent did not have the authority to execute the loan documents at issue in that case.  *Id.* at 831–32.  Here, as discussed, there is no evidence that GCNA knew Christopher Opolka lacked authority to execute the bond agreement.  In the absence of any governing authority that is more closely aligned to the facts of this case, we decline to read a due diligence requirement into § 14-11-301(b)(2) that does not appear in the text of the statute.  *See Six Flags Over Ga. v. Kull*, 276 Ga. 210, 211 (Ga. 2003) ("Where the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden.").

In short, Christopher Opolka, a manager of Pine Plantation, appeared to have the authority to execute the bond agreement on behalf of Pine Plantation, and there

12

is no evidence GCNA knew he lacked the authority. Having thus satisfied the

"other approval" requirements of § 14-11-301(b)(2), Christopher Opolka acted

within his agency authority as a manager of Pine Plantation when he executed the

bond agreement, thereby binding Pine Plantation to the agreement.

## II.     The district court did not abuse its discretion by relying on inadmissible hearsay in ruling on GCNA's summary judgment motion.

In support of its motion for summary judgment, GCNA submitted deposition

and affidavit testimony from John Redding and Michael Dawson. Redding is the

GCNA underwriter who negotiated and drafted the bond agreement. Dawson, an

agent from Yates Insurance Company, assisted in the drafting and in the

negotiations. Pine Plantation argues that the district court should not have relied

on Redding and Dawson's testimony because it contained inadmissible hearsay.

Hearsay is an out-of-court statement that is offered in evidence "to prove the

truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2). An out-of-

court statement not admitted for its truth, but instead used for another purpose, is

not hearsay. *United States v. Mateos*, 623 F.3d 1350, 1355 (11th Cir. 2010). In

their testimony, Redding and Dawson both recounted certain out-of-court

statements regarding the scope of Christopher Opolka's agency authority. But

GCNA did not rely on those statements to prove the truth of the matter asserted,

that is, to prove that Christopher Opolka was in fact authorized to execute the bond

agreement. Instead, GCNA relied upon Redding's testimony to prove that it had

13

no knowledge of the limited scope of Christopher Opolka's agency authority under Pine Plantation's operating agreement and it relied upon Dawson's testimony to prove that it believed Christopher Opolka had executed a similar agreement on Pine Plantation's behalf in the past. Accordingly, the testimony is not hearsay, and the district court did not abuse its discretion in relying upon it.

### III.    GCNA produced sufficient evidence to prove damages.

Finally, Pine Plantation argues that GCNA did not present sufficient evidence at trial to prove damages, an essential element of its breach of contract claim. Specifically, Pine Plantation asserts that Christina Zabek's testimony as to damages was not based on her personal knowledge and contained inadmissible hearsay, and that GCNA was required to produce physical copies of the bond claim documents rather than relying on the checks it produced showing paid claims. Due to these deficiencies, Pine Plantation argues, the district court should have granted judgment as a matter of law. We do not agree.

#### A.    Christina Zabek's testimony was admissible.

As discussed, Zabek is the GCNA employee who was responsible for handling the bond claims GCNA received from suppliers and subcontractors of Gary's Grading. In her trial testimony, Zabek explained her process for investigating and settling bond payment demands related to the Gary's Grading account. In addition, Zabek described how much GCNA paid to the bond

claimants, the costs of processing and settling the bond demands, the amount of GCNA's attorney's fees incurred in this lawsuit, the amount GCNA expects to pay to bond claimants in the future, and the amount of any funds GCNA has recovered on the Gary's Grading bonds.

Zabek's testimony was based on her personal knowledge obtained from working with Gary's Grading bond claimants. Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). And contrary to Pine Plantation's argument, the testimony was not hearsay. Although Zabek repeated out-of-court statements during her testimony, including the amount of money demanded of GCNA by Gary's Grading bond claimants, GCNA did not rely upon those statements to prove the truth of the matter asserted in the statements, but rather to show that GCNA received bond claims and its response to those claims. *See United States v. Rivera*, 780 F.3d 1084, 1092 (11th Cir. 2015) ("Generally, an out-of-court statement admitted to show its effect on the hearer is not hearsay.").

B.    GCNA was not required to produce bond claim documents to substantiate the amount of its damages.

As discussed, GCNA relied upon Zabek's testimony and copies of the checks it wrote to bond claimants in order to prove its damages. Pine Plantation argues that GCNA was required to also produce copies of the bond claim documents submitted to GCNA, and that it violated the best evidence rule by

15

failing to do so.  We disagree.  The best evidence rule requires a litigant to produce an original document "to prove [the] content" of the document.  Fed. R. Evid. 1002.  But GCNA was not required to produce the original bond claim documents, because it was not trying to prove the content of those documents.  *See Telecom Tech. Servs., Inc. v. Rolm Co.*, 388 F.3d 820, 830 (11th Cir. 2004) ("The best evidence rule applies where the party presenting evidence seeks to prove the specific contents of a writing.").  Rather, GCNA was trying to prove the amount of money it spent paying and settling claims pursuant to the bond agreement.  Zabek's testimony and the checks verifying payments GCNA made to Gary's Grading bond claimants were sufficient evidence of that amount.

Further, the bond agreement expressly states that if GCNA seeks indemnification, "[v]ouchers or other evidence of payments made by [GCNA] shall be prima facie evidence of the fact and amount of the liability" of Pine Plantation to GCNA.  This type of provision is enforceable under Georgia law, and it clearly was satisfied by the "other evidence" produced by GCNA.  *See Cagle Constr., LLC v. Travelers Indem. Co.*, 305 Ga. App. 666, 668–69 (Ga. Ct. App. 2010).

C.    The district court correctly denied Pine Plantation's motion for judgment as a matter of law.

As indicated by the above discussion, the district court correctly denied Pine Plantation's motion for judgment as a matter of law.  Judgment as a matter of law

16

is only appropriate if "a reasonable jury would not have a legally sufficient evidentiary basis" to find for the nonmovant on a particular issue. Fed. R. Civ. P. 50(a)(1). To substantiate its claimed damages, GCNA submitted 105 pages of checks written to bond claimants. Zabek explained these checks to the jury, and she summarized GCNA's total costs: GCNA paid $3,006,338.55 to the bond claimants, spent $50,756.83 investigating and settling the claims, expended $60,053.15 in attorney's fees, and expects to pay an additional $954,069.27 to bond claimants who have demanded payment, but whom GCNA has not yet paid. This totals $4,071,217.80. GCNA has already received $1,524,863.11 in recoveries from other sources. The jury subtracted GCNA's recoveries ($1,524,863.11) from its total losses ($4,071,217.80) to get the damages figure of $2,546,354.69.

Zabek's testimony and the checks provide sufficient evidence for a reasonable jury to find for GCNA. Fed. R. Civ. P. 50(a). It appears that the jury found Zabek credible, relying on her totals and the admitted checks to calculate damages. It was reasonable for the jury to do so. Though GCNA did not provide physical copies of the bond demand documents, the jury had testimony and copies of checks. There was a sufficient evidentiary basis for a reasonable jury to find the defendant-indemnitors liable for $2,546,354.69.

17

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's summary

judgment order and its entry of judgment on the jury's verdict as to damages.

18