[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-12703

Non-Argument Calendar

_____

SOUTHERN-OWNERS INSURANCE COMPANY,

Plaintiff-Appellant

*versus*

WATERHOUSE CORPORATION,
NURSERY SUPPLIES INC.,
DARRELL PATTERSON,

Defendants-Appellees

_____

Appeal from the United States District Court
for the Middle District of Florida

D.C. Docket No. 6:21-cv-00504-PGB-EJK

_____

Before WILSON, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Is a cooling tower a "building" or "structure"?  Or is it machinery or equipment?  Plaintiff-Appellant Southern-Owners Insurance Company contends that a cooling tower is a structure, whereas Waterhouse Corporation, Nursery Supplies, Inc., and Darrell Patterson (collectively, Defendants-Appellees) argue it is equipment.  At summary judgment, the district court agreed with the Defendants-Appellees and held that a cooling tower is not a building or structure, and therefore Southern-Owners has a duty to defend Waterhouse under its insurance policies.  Southern-Owners now appeals the district court's denial of its motion for summary judgment.  After careful review, we affirm.

**I.**

This case arises out of a Florida state court negligence action filed by Darrell Patterson against Nursery Supplies and Waterhouse.  Nursery Supplies, which manufactures products for the horticulture industry, had hired Waterhouse to perform monitoring, maintenance, and water treatment services for the cooling tower located on its property.  Nursery Supplies also hired non-party Del-Air Heating and Air Conditioning to perform certain work on the cooling tower.

In early July 2019, Patterson, a plumber and electrician employed by Del-Air, performed work in and around the cooling tower. About two weeks later, he was admitted to the hospital and diagnosed with Legionnaires' disease. Water samples from the cooling tower confirmed the presence of legionella bacteria—the same subtype of legionella bacteria that was found in Patterson's urine when he was hospitalized. In January 2021, Patterson sued Nursery Supplies and Waterhouse in Florida state court for negligence (the Underlying Action).

When Patterson contracted Legionnaire's disease, Waterhouse was insured under policies issued by Southern-Owners. The first policy provided commercial general liability coverage (CGL Policy), and the second policy was a commercial umbrella policy of insurance (Umbrella Policy). The CGL Policy contained the following fungi or bacteria exclusions:

> A. Under SECTION 1 – COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, the following exclusions are added:
>
> 1. "Bodily injury" or "property damage" arising out of, in whole or in part, the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria, whether air-borne or not, on or within a building or structure, including its contents. This exclusion applies whether any other cause, event,

4                    Opinion of the Court                    22-12703

> material or product contributed concurrently or in any sequence to such injury or damage. . . .
>
> These exclusions do not apply to any "fungi" or bacteria that are on, or are contained in, a good or product intended for human consumption.

The Umbrella Policy contained a similar fungi or bacteria exclusion:

> A. The following definition is added to the DEFINITIONS section of the policy:
>
> Fungi means any form or type of fungus, including, but not limited to, any mildew, mold, spores, mycotoxins, scents or byproducts released or produced by any type or form of fungus.
>
> B. The following exclusions are added to the EXCLUSIONS section of the policy:
>
> 1. Bodily injury, property damage, personal injury or advertising injury arising out of, in part or in whole, the actual, threatened or alleged ingestion of, inhalation of, exposure to, contact with, presence of, or existence of, any fungi or bacteria, whether airborne or not, within or on a structure or building, including its contents.  This exclusion applies whether any other event, cause, product or material contributed in any sequence or concurrently to such damage or injury. This exclusion shall not apply to any fungi or bacteria that are contained in, or are on, a product or good intended for human consumption.

Southern-Owners agreed to defend Waterhouse in the Underlying Action pursuant to a reservation of rights. In March 2021, Southern-Owners filed suit against the Defendants-Appellees in the United States District Court for the Middle District of Florida, seeking declaratory relief that Patterson's claims are not covered in the Underlying Action due to the fungi or bacteria policy exclusions. Southern-Owners filed a motion for summary judgment in which it argued that the Underlying Action falls within the exclusions because the cooling tower is a "structure." Nursery Supplies and Patterson filed separate responses in opposition to the summary judgment motion. Both parties argued that the cooling tower is not a "structure" within the meaning of the exclusions.

In July 2022, the district court denied Southern-Owners' motion for summary judgment and declared that the policies cover the alleged injuries in the Underlying Action. The district court further declared that the exclusionary provisions do not apply to the claims in the Underlying Action because a cooling tower is not a building or structure—rather, it constitutes large-scale machinery. In reaching this conclusion, the district court relied on our unpublished opinion in *Westport Insurance Corporation v. VN Hotel Group, LLC*, 513 F. App'x 927 (11th Cir. 2013) (per curiam)[1]; principles of Florida

---

[1] In *Westport*, the insurer brought a declaratory judgment action seeking to determine whether it had a duty to defend and indemnify a hotel and its franchisor. *Id*. at 929. The underlying action was a wrongful-death suit brought by the estate of a hotel guest who had contracted Legionnaires' Disease in the outdoor spa and died. *Id*. We concluded that the fungi/bacteria exclusion of the insurance policy did not exclude coverage because an outdoor spa does

insurance and contract law; and the *ejusdem generis* and *noscitur a sociis* canons of statutory construction.  The district court declared that Southern-Owners has a duty to defend, and potentially indemnify, Waterhouse in the Underlying Action.  Judgment was entered in favor of Nursery Supplies and Patterson.

## II.

We review the district court's ruling on a motion for summary judgment de novo.  *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

"The interpretation of an insurance contract is also a matter of law subject to *de novo* review."  *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1515 (11th Cir. 1997) (per curiam).  Since this is a diversity action, we apply state law using the choice of law rules of the forum state.  *Travelers Prop. Cas. Co. of America v. Moore*, 763 F.3d 1265, 1270 (11th Cir. 2014).  Florida follows the rule of lex loci contractus, which provides that the law of the jurisdiction where the insurance contract was executed governs.  *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006).  Here, the insurance policies were issued in Florida, so Florida law applies.

"Florida law provides that insurance contracts are construed in accordance with the plain language of the policies as bargained

---

not qualify as a "structure."  *Id*. at 932.  Thus, the insurer had a duty to defend and indemnify.  *Id*.

22-12703                Opinion of the Court                7

for by the parties." *Auto-Owners Inc. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). If the policy language is plain and unambiguous, "a court must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the policy as it was written." *Travelers Indem. Co. v. PCR Inc.*, 889 So. 2d 779, 785 (Fla. 2004). If the policy language can be reasonably interpreted in more than one way, one providing coverage and the other limiting coverage, the policy is ambiguous. *Anderson*, 756 So. 2d at 34. Ambiguous provisions—including ambiguous policy exclusions—"are interpreted liberally in favor of the insured and strictly against the drafter." *Id*. "In fact, exclusionary clauses are construed even more strictly against the insurer than coverage clauses." *Id*.

When an insurance policy does not define a word, we can look to dictionary definitions for their plain meaning. *See Cont'l Cas. Co. v. Wendt*, 205 F.3d 1258, 1264 (11th Cir. 2000) (per curiam); *Universal Underwriters Ins. Co. v. Evans*, 565 So. 2d 741, 742 (Fla. Dist. Ct. App. 1990).

With these principles in mind, we turn to the language of the fungi or bacteria exclusions in the CGL and Umbrella Policies.

### III.

We agree with the district court's conclusion that a cooling tower does not constitute a building or structure and is more properly considered machinery. Thus, Patterson's claims are not excluded from coverage under the fungi or bacteria exclusions. The district court properly denied Southern-Owners' motion for summary judgment.

Both the CGL Policy and the Umbrella Policy excludes coverage for "[b]odily injury . . . arising out of . . . exposure to . . . any fungi or bacteria . . . within or on a building or structure."[2] Here, the policy language can be reasonably interpreted in two ways—one providing coverage and the other excluding coverage. *Anderson*, 756 So. 2d at 34. One could reasonably interpret "structure" to include a cooling tower, but it would be equally reasonable to interpret "structure" to mean something more akin to a building. Thus, the policy language is ambiguous.

Neither policy defines "building" or "structure," so we may look to dictionary definitions to determine the plain meaning of the terms. *Wendt*, 205 F.3d at 1264. The Merriam-Webster dictionary defines "building" as "a usually roofed and walled structure built for permanent use (as for a dwelling)." *Building*, MERRIAM-WEBSTER (2023), https://www.merriam-

---

[2] The language of the Umbrella Policy exclusion mirrors the CGL Policy exclusion, except that "structure" is listed before "building." Southern-Owners does not argue that this difference in the sequence of terms is material, thus we will disregard this minor difference.

webster.com/dictionary/building. It defines "structure" as "something (such as a building) that is constructed." *Structure*, MERRIAM-WEBSTER (2023), https://www.merriam-webster.com/dictionary/structure.

While a cooling tower may indeed qualify as a "structure" under a broad definition of the term, Florida law clearly instructs that ambiguous provisions in insurance policies must be interpreted strictly against the drafter. *Anderson*, 756 So. 2d at 34. Exclusionary provisions are to be construed "even more strictly against the insurer than coverage clauses." *Id.*; *see also State Comprehensive Health Ass'n v. Carmichael*, 706 So. 2d 319, 320 (Fla. Dist. Ct. App. 1997) (listing cases). Here, given the ambiguity of the language in the fungi or bacteria exclusions, we must construe the provisions *strictly* against Southern Owners and *liberally* in favor of coverage.

The doctrine of *noscitur a sociis* (a word is known by the company it keeps) further supports our view that a cooling tower is not a structure. When applying this canon of construction, "one examines the other words used within a string of concepts to derive the [drafter's] overall intent." *Nehme v. Smithkline Beecham Clinical Lab'ys*, 863 So. 2d 201, 205 (Fla. 2003); *see also Air Quality Assessors of Fla. v. S.-Owners Ins. Co.*, 354 So. 3d 569, 572 (Fla. Dist. Ct. App. 2022) (applying *noscitur a sociis* to an exclusionary provision in an insurance policy). Here, applying *noscitur a sociis* to the fungi or bacteria exclusions, we must examine the word "structure" in relation to the word "building" to derive its meaning.

Southern-Owners argues that, even under a narrow definition of structure, the cooling tower constitutes a "building like" structure because it is two stories tall, has four sides, a bottom, and a door. We reject this argument because, in our view, a cooling tower is not similar to a building. As the district court noted in its order, a cooling tower

> is designed to remove heat from a building or facility by spraying water down through the tower to exchange heat into the inside of the building. Air comes in from the sides of the tower and passes through the falling water. . . . The cooled water is collected at the bottom of the tower and pumped back into the plant or building for reuse. Cooling towers are primarily used for heating, ventilation, and air conditioning and industrial purposes.

Doc. 75 at 25 (citations omitted and alterations adopted).

We are persuaded by the district court's logic that, given its purpose and function, a cooling tower constitutes large-scale machinery or equipment rather than a building or building-like structure.

We conclude that the language "building" or "structure" in the fungi or bacteria exclusionary provisions does not encompass a cooling tower, thus the underlying claims are not excluded from coverage. Accordingly, we affirm the district court's denial of Southern-Owners' motion for summary judgment.

**AFFIRMED.**